SCHOOLS Under the provisions of 62 O.S. 371 [62-371] (1971) and 70 O.S. 5-124 [70-5-124] (1971), a board of education may not lawfully purchase water from a rural water district which employs a member of the board of education as a salaried manager of the water district. Under these sections, a board of education may not make occasional purchases of materials and supplies in the open market from a firm or company that employs one of the board members. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions: "(1) May a board of education purchase water from a rural water district if a member of the board of education is a salaried manager of the water district? "(2) May a board of education make occasional purchases of materials and supplies in the open market from a firm or company that employs one of the board members? The board member in question is a salaried employee and owns no stock in the company." A rural water district is a statutory entity which may be created pursuant to the procedures set forth within the "Rural Water, Sewer, Gas, and Solid Waste Management Districts Act," found at 82 O.S. 1324.1 [82-1324.1] et seq. (1976). Under this Act, rural water districts may be organized and established for the purpose of "developing and providing an adequate rural water supply . . . to serve and meet the needs of rural residents within the territory of the district." 82 O.S. 1324.3 [82-1324.3] (1976). The districts so created may, under various circumstances, be characterized as political subdivisions of the State of Oklahoma, or, independent nonprofit corporations. In this connection, 82 O.S. 1324.6 [82-1324.6] (1976), Subsection 6, provides in pertinent part that Upon the creation of such district, it: ". . . shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in this Act . . . Such districts shall not be political corporations or subdivisions of the State within the meaning of any constitutional debt limitations . . ." Title 62 O.S. 371 [62-371] (1971), provides: "No board of county commissioners nor city council, nor board of trustees of any town, nor any board of any school district in this state shall make any contract with any of its members, or in which any of its members shall be directly or indirectly interested; and all contracts made in violation of this section shall be wholly void. "For the purposes of this section, the depositing of any funds in a bank or other depository shall not be considered the making of a contract." Similarly, 70 O.S. 5-124 [70-5-124] (1971) provides: "No board of education of any school district in this State shall make any contract with any of its members or with any company, individual or business concern in which any of its members shall be directly or indirectly interested. All contracts made in violation of this Section shall be wholly void. A member of a board of education shall be considered to be interested in any contract made with any company, individual, or any business concern if such member of the board of education or any member of his immediate family owns any substantial interest in same." The last quoted sections have been discussed in numerous prior opinions of the Attorney General. In an opinion issued June 11, 1964, to the Honorable Haman M. Foster, County Attorney of Texas County, Guymon, Oklahoma, the Attorney General was asked if a board of education could purchase items from a corporation which employed a board member as an assistant manager of the corporation. In this opinion it was held that under 70 O.S. 4-29 [70-4-29] (1961), the then applicable conflict of interest statute, the contract would be unlawful. In 7 Okl.Op.A.G. 129 (Opinion No. 74-181), the Attorney General was asked two questions almost identical to those posed in your request. In this opinion, the Attorney General was asked if a board of education could make occasional purchases of materials and supplies in the open market from a firm or company that employed one of the board members. The Attorney General in this opinion was also asked if a board of education could accept a bid from a company which employed one of the board of education members. Citing 70 O.S. 5-124 [70-5-124] (1971), and 62 O.S. 371 [62-371] (1971), and the prior opinions from this office, the questions posed in this request were answered in the negative. This opinion held that a board of education could not purchase materials and supplies from a firm or company which employed one of the board members, and further, that a board of education could not accept a bid on a contract solicited by the board member from a company which employed one of the board members. Based upon the relevant statutory provisions and the holdings above cited, it may be concluded that the prohibitions set forth would apply to the transaction described in your question, and that accordingly, the proposed purchase and contract would be unlawful. The prior opinion from this office, 7 Okl.Op.A.G. 129, supra, is expressly reaffirmed as deemed applicable to your questions. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Under the provisions of 62 O.S. 371 [62-371] (1971) and 70 O.S. 5-124 [70-5-124] (1971), a board of education may not lawfully purchase water from a rural water district which employs a member of the board of education as a salaried manager of the water district. Under these sections, a board of education may not make occasional purchases of materials and supplies in the open market from a firm or company that employs one of the board members. (R. THOMAS LAY) ** SEE: OPINION NO. 78-206 (1978) ** ** SEE: OPINION NO. 91-651 (1991) (UNPUBLISHED) ** ** SEE: OPINION NO. 87-518 (1987) (UNPUBLISHED) ** ** SEE: OPINION NO. 80-134 (1980) **